HARRY JOHN BRUER v. CITY OF MINNEAPOLIS AND ANOTHER.[1]

October 15, 1937.

No. 31,299.

[1]Reported in 275 N. W. 368.

O. A. Brecke and E. T. Chesnut, for appellant.

Ralph T. Boardman and John F. Dulebohn, for Minneapolis Street Railway Company, respondent.

LORING, JUSTICE.

This is an appeal from an order setting aside a verdict for the plaintiff as against the defendant street railway company and ordering judgment of dismissal on the merits. This order was made upon a motion for judgment or new trial made by the street railway company. The case involves damages to the plaintiff's residence property on Bryant avenue south in Minneapolis caused by the erection of a bridge across Minnehaha Parkway, the south approach to which was raised above the grade of Bryant avenue where that street abuts the plaintiff's property.

In the year 1929 the public convenience required some provision for streetcar service in the territory south of Minnehaha Creek and between Nicollet and Penn avenues in the city of Minneapolis. Several routes were proposed for the extension into this territory, and, among others, the line running south on Bryant avenue from Fiftieth to Fifty-sixth street was suggested. It appeared to the city council that this route would furnish the best service, and it was also the most economical for the street railway from the standpoint of cost of operation. The extension of this line necessitated the construction of a bridge across the valley of Minnehaha Creek, which was in the jurisdiction of the park board. The consent of that board was obtained, and in 1931 the bridge was erected by the city, the street railway company contributing $50,000 toward the expense of its construction. The bridge as built was only wide enough for a single car track, and no other vehicular traffic is permitted on it. A footbridge on one side takes care of pedestrian traffic but does not extend to plaintiff's property.

The Minnehaha Creek valley in the vicinity of Bryant avenue extends in an easterly and westerly direction, and Bryant avenue runs north and south. There is a boulevard on each side of Minnehaha Creek, the south boulevard being at a much lower elevation than the north boulevard at the point where they cross Bryant

avenue. The south boulevard passes under the bridge. The north boulevard crosses Bryant at grade. Fifty-third street west runs east and west and lies about one block south of the south boulevard. The grade along Bryant avenue from Fifty-third street down to the south boulevard is rather steep, in some places as much as 11 per cent. The bridge as it was constructed was made of concrete archways across the Minnehaha valley and south thereof as far as the alley which intersects the block between the south boulevard and Fifty-third street. From that point to Fifty-third street the approach is solid concrete. At the alley the floor of the bridge is nine feet above the established grade of Bryant avenue, and from there to Fifty-third street the elevation above grade gradually decreases until the floor of the bridge meets the street grade at Fifty-third street. The plaintiff's property abuts on Bryant avenue and Fifty-third street and extends north on Bryant avenue as far as the alley. The height of the bridge at the north end of the plaintiff's house is approximately six feet above the grade of Bryant avenue.

The plaintiff brought suit against both the city and the street railway company for the damages to his property on account of the erection of the bridge. The city paid him $2,150 for a covenant not to sue, and he proceeded with his case against the street railway company, which will be hereinafter referred to as the defendant. The jury returned a verdict of $3,500 against the defendant and answered a special question submitted to them stating that such amount was the full and actual damage sustained regardless of any money paid by the city.

It must be conceded that the action of the city in erecting the bridge amounted in fact to a change of grade *pro tanto*. And it is not disputed that the city was liable in damages to the plaintiff for the ensuing injury to his property, so the question here is whether the street railway company was a joint tortfeasor with the city. The plaintiff claims that it was because the company contributed to the cost of construction and now uses the bridge to the exclusion of other traffic. We do not think this constitutes the street railway company a tortfeasor. It is true that. the street

railway company contributed to the cost of construction, but that of itself did not make the company a trespasser. We think it had a right to assume that the city would perform its full duty in constructing the bridge and changing the grade and would compensate all property owners for the damage to their property. It was ordered by the city council to lay its tracks upon the bridge and to extend its service to Fifty-sixth street, and it complied with that order. Had it not done so it would doubtless have been compelled so to do by *mandamus* proceedings. The title to the bridge is entirely and exclusively in the city of Minneapolis, and, as we understand counsel, it is conceded that if the public interest or convenience should require it the city council could order discontinuance of the service across the bridge, and the street railway would be obliged to comply. It is true that other vehicular traffic is excluded from this bridge, but quite obviously that exclusion by the city is for the safety of the vehicular traffic as well as of the street railway traffic. It is quite clear that at any time the city may widen the bridge and extend the convenience of the bridge to all kinds of traffic. Of course it would be liable for any additional damage caused to abutting property. It is also quite clear that the railway company had no power whatever to fix the grade or change the grade of Bryant avenue, nor has it the power of eminent domain.

The distinction is clear between the case at bar and that of an elevated railway, where, by franchise, the elevated railway company imposed an additional servitude upon the street without changing the grade of the street proper for other traffic. Nor do we find here any appropriation of public funds for a private purpose or the extension of the city's credit for other than a public purpose.

It is conceded by counsel for both parties that no case has been found which throws light directly upon the point here at issue. We think that the general principles applicable to the situation are clear and that the trial court was right in directing judgment.

The order appealed from is affirmed.