## LOUIS A. McCARTHY AND ANOTHER v. CITY OF MINNEAPOLIS AND OTHERS.[1]

October 14, 1938.

No. 31,793.

[1]Reported in 281 N. W. 759.

*Edward J. Callahan* and *Edward J. Kotrich,* for appellants.

*R. S. Wiggin,* City Attorney, and *Palmer B. Rasmusson,* Assistant City Attorney, for respondent City of Minneapolis.

Stone, Justice.

Action to charge the city of Minneapolis with damage plaintiffs claim to have suffered from the construction of the street railway bridge described in Bruer v. City of Minneapolis, 201 Minn. 40, 275 N. W. 368, wherein we held that the Minneapolis Street Railway was not liable, as a joint tortfeasor, to abutting property owners. The instant case comes here on appeal by plaintiffs from an order sustaining, without leave to plead over, general demurrers to the complaint.

There is no allegation of negligence. The case for plaintiffs reduces itself to a claim that the construction and maintenance of the viaduct created as to them a private nuisance. This decision in favor of the city makes unnecessary further reference to defendants Tetzlaff, purchasers of the involved real estate from plaintiffs pending the construction of the bridge, and after much, if not all, of plaintiffs' damage had accrued.

The bridge is a modern affair of reinforced concrete. It carries the streetcar track southerly on Bryant avenue, over the valley of Minnehaha creek, which passes under it at this point about at right angles. The creek is flanked on the south by West Minnehaha Boulevard, on which, west of the bridge, plaintiffs' residence property faces north. It does not abut on Bryant avenue but is sep-

arated therefrom by one 60-foot lot. The means of ingress to and egress from plaintiffs' property remain as before. The boulevard passes unimpeded under the bridge. Inasmuch as on this appeal the well pleaded allegations of the complaint are to be considered true, we assume that the value of plaintiffs' property was much diminished by the construction of the bridge.

We proceed then to consider whether any right of plaintiffs was invaded. Our answer to that question, for reasons hereinafter appearing, is a negative.

■ The bridge was erected by the city in proper exercise of its governmental power over streets and street traffic. But if otherwise they have a case, plaintiffs are entitled to invoke Minn. Const. art. 1, § 13, as amended in 1896, declaring that: "Private property shall not be taken, destroyed or damaged for public use, without just compensation therefor first paid or secured." Where property is not taken for public use, but is damaged thereby without compensation therefor first paid or secured, the owner has his cause of action in tort against the wrongdoer. Stuhl v. G. N. Ry. Co. 136 Minn. 158, 161 N. W. 501, L. R. A. 1917D, 317. See Annotation 20 A. L. R. 516. (There may be a void in the law of remedies if the wrongdoer happens to be the state itself, because the latter is protected by its sovereign immunity from suit. Nelson v. McKenzie-Hague Co. 192 Minn. 180, 256 N. W. 96, 97 A. L. R. 196.)

■ By the constitutional amendment covering damage without taking, no new cause of action unknown to the common law was created. The amendment but removed a bar imposed by some legislative and some constitutional law to one species of action in tort. Its incidence is not on "the substantive law of damages." Its only purpose is to allow recovery in the same circumstances and manner against corporations having power of eminent domain as against those not enjoying that power (Stuhl v. G. N. Ry. Co. *supra*)—"to give a remedy merely for legal wrongs, and not for such injuries as were *damnum absque injuria.*" Smith v. St. P. M. & M. Ry. Co. 39 Wash. 355, 366, 81 P. 840, 844, 70 L. R. A. 1018, 1024, 109 A. S. R. 889.

■ The fact alone that the city was within its legal right in erecting the bridge may not absolve it from liability. But it is not liable as for tort unless what it has done amounts to a "private nuisance as to individuals who are specially injured thereby." Romer v. St. Paul City Ry. Co. 75 Minn. 211, 218, 77 N. W. 825, 826, 74 A. S. R. 455. Certainly there was no private nuisance as to plaintiffs if none of their private rights were invaded.

The bridge effected a separation of street traffic. *Pro tanto* it was a change of grade. Legally as well as factually, the bridge is a part of the street. Willis v. Winona City, 59 Minn. 27, 60 N. W. 814, 26 L. R. A. 142. From that change alone plaintiffs suffered no damage. None but abutting owners recover damages for a change of grade without more. (If the right of access of a non-abutting owner is impaired, another factor, not present here, may come in. See Fitzer v. St. Paul City Ry. Co. 105 Minn. 221, 117 N. W. 434, 18 L.R.A.(N.S.) 268, 127 A. S. R. 557.)

■ Neither was plaintiffs' easement for light and air invaded. Its physical reach is confined to the street in front of their property, and also, we assume, to the alley in the rear. It has no operation laterally. For example, a lofty building on the lot between plaintiffs' dwelling and Bryant avenue would cut off much more of light and air than does the bridge, but it would be no invasion of plaintiffs' right. So also, municipal authority might vacate some streets and alleys immediately east of plaintiffs' property for the erection of a large school building, with much more obstruction of light and air. That would not entitle plaintiffs to damages, 1 Tiffany, Real Property (2 ed.) § 336, although they might recover for vacation of streets and alleys, if it interfered with access to their lot.

■ For plaintiffs there is claimed an easement of view, independent, or in extension and application, of their easement for light and air. Some jurisdictions do recognize the existence of such an easement. See 1 Lewis, Eminent Domain (3 ed.) 191. We may and do postulate its existence. But "the owner of land cannot object that his building is deprived of light by an erection on adjacent land, that a view from his premises is cut off thereby, or

that the view of his shop windows or signs by the public is so cut off." 1 Tiffany, Real Property (2 ed.) § 336, pp. 1121-1122. The cases allowing lateral operation to the easement of view go no further than to restrain adjoining owners from putting some obstruction on or over the street or sidewalk in front of the property (in this case West Minnehaha Boulevard), thus cutting off their neighbor's lateral view of the street. Such an obstruction is usually a public nuisance, and the only necessary operation of the easement of view is to afford that special damage which will enable the neighbor to complain. See McCormick v. Weaver, 144 Mich. 6, 107 N. W. 314; First Nat. Bank v. Tyson, 144 Ala. 457, 39 So. 560; Perry v. Castner, 124 Iowa, 386, 100 N. W. 84, 66 L. R. A. 160, 2 Ann. Cas. 363. See also 2 Tiffany, Real Property (2 ed.) § 417, pp. 1533-1535.

Not every diminution in the value of property caused by public improvement entitles the owner to recover. The damage must be to the property itself. That sum of rights which is the property must be damaged in substance, or rendered intrinsically, rather than esthetically, less valuable. "The erection of a county jail or a county hospital may impair the comfort or pleasure of the residents in that vicinity, and to that extent render the property less desirable, and even less salable, but this is not an injury to the property itself so much as an influence affecting its use for certain purposes; but whenever the enjoyment by the plaintiff of some right in reference to his property is interfered with, and thereby the property itself is made intrinsically less valuable, he has suffered a damage for which he is entitled to compensation." Eachus v. Los Angeles C. E. Ry. Co. 103 Cal. 614, 617, 37 P. 750, 751, 42 A. S. R. 149, 152, quoted in 1 Lewis, Eminent Domain (3 ed.) 669.

It all comes back to the point, on this phase of the argument, that no easement appurtenant to plaintiffs' lot entitled them to a view, limited only by human vision, over the whole reach of the boulevard in front of their lot.

■ Plaintiffs aver that the "privacy and comfort" of their dwelling were diminished by the noise and vibration of the streetcars on the bridge. Of that plaintiffs cannot complain, because even though

the streetcar tracks had been placed in front of their property, they would not have constituted an additional servitude. City of St. Paul v. G. N. Ry. Co. 138 Minn. 25, 163 N. W. 788, L. R. A. 1917F, 485; Note, 36 L.R.A.(N.S.) 709.

In Aldrich v. Metropolitan W. S. Elev. R. Co. 195 Ill. 456, 463, 63 N. E. 155, 157, 57 L. R. A. 237, 242, an elevated railway was constructed 31 feet from plaintiff's premises, crossing the street on which plaintiff's house was located. The suit was for damages for interference with plaintiff's easements for light and air, and for view. The court observed: "Noise, the obstruction of light and of view, are necessary incidents of the construction and operation of such roads, and if every property owner could recover in all such cases, the making of public improvements would become practically impossible."

There can be no actionable wrong without invasion of a right. This case fails simply because plaintiffs have no right of either public or private nature which was invaded. All their rights were held subject to a proper exercise of the functions of government. The exercise of those functions must keep abreast of and adopt itself to changing conditions. Were the municipality to be liable generally to property owners for diminution in value resulting from exercise of its governmental powers, its functioning would be much impeded and in some cases prevented. Private rights and interests, as against public rights and interests, cannot be exalted to the extent necessary to qualify plaintiffs' claim as a cause of action against the city.

Order affirmed.