STATE, BY HARRY H. PETERSON, ATTORNEY GENERAL, v.
LOUIS ANDERSON AND OTHERS.
JOHN D. KOCH AND OTHERS, INTERVENERS.[1]

June 1, 1945.

No. 33,922.

[1]Reported in 19 N. W. (2d) 70.

*J. A. A. Burnquist,* Attorney General, and *Victor J. Michaelson,* Special Assistant Attorney General, for the State.

*Carl J. Eastvold, E. V. Cliff,* and *Victor E. Anderson,* for respondents.

MAGNEY, JUSTICE.

In 1935 and 1936, the state, pursuant to L. 1935, c. 51, and Ex. Sess. L. 1935-1936, c. 101, instituted two separate proceedings in Big Stone and Lac qui Parle counties, respectively, for the purpose of condemning land for use in the conservation of natural resources of the state and, particularly, for the purposes of flood control and restoration of lakes. The proceeding in Big Stone county was in connection with two WPA projects for the artificial diversion of Whetstone River into Big Stone Lake and the impounding of such waters by the erection of a dam, numerous dikes, and a control works. The proceeding in Lac qui Parle county, here under review, was instituted in connection with a third WPA project for the erection of a dam across the Minnesota River some distance south and east of Lac qui Parle Lake.

The three projects having been approved by the district court, the state proceeded to condemn the lands which it considered necessary therefor. The building of dikes, dams, and control works was immediately begun and completed in 1937. The state acquired 3,611 acres of land in connection with the Lac qui Parle county proceeding, but no final certificate of completion was ever filed as required by Minn. St. 1941, § 117.20(4), (Mason St. 1927, § 6557-1[d]).

Respondents Koch and certain others are the owners of lands in Big Stone and Lac qui Parle counties situated between the projects. They were not, however, made parties to the original proceedings in either county. Claiming that their lands were flooded in 1937 and again in 1942 as a result of the public works undertaken by the state, on August 26, 1942, they filed separate verified petitions in intervention in the Lac qui Parle county proceeding, and separately moved the court for orders that their respective lands be brought into that proceeding and that commissioners be appointed to ascer-

tain and report the damages sustained by them in respect to their lands.

On September 15, 1942, the date set for the hearing on the motions, the state entered special appearances in opposition to the jurisdiction of the court to entertain the motions. However, none of the questions raised, either by the motions or by the special appearances, were determined at the time, because of the pendency of the proceeding in Big Stone county, in which an appeal was then contemplated which ultimately did reach this court. See, State, by Peterson, v. Bentley, 216 Minn. 146, 12 N. W. (2d) 347. Subsequently, and before any decision upon the special appearances, the state demurred separately to each petition in intervention. The demurrers are dated September 30, 1942, but were not filed until April 14, 1943.

On February 16, 1944, and after the Bentley case had been decided by this court, separate orders were made and filed in the Lac qui Parle county proceeding, each entitled, "Order Granting Petition for Enlargement of Above Proceedings." In each order the special appearance made by the state was expressly referred to and overruled, but no mention or disposition was made of the state's demurrers. Instead, the court made findings that the construction and maintenance of the three WPA projects caused diversion of water from the watersheds of the Whetstone and Little Minnesota Rivers and Big Stone, Lac qui Parle, and Marsh Lakes, and that the water so diverted or impounded ran upon the lands of petitioners in intervention and remained thereon for long periods of time, invading private property, depriving the owners of the beneficial use and enjoyment of their property, and resulting in serious, substantial, and permanent loss and damage, for which the state had in no way compensated the owners. Then followed orders that the petitions of the owners to bring their lands into, and to be made parties to, the Lac qui Parle county proceeding be granted and that their lands be included to the same extent as if originally described in the petition and order of condemnation. Commissioners were appointed to ascertain and report the amount

of damages sustained by the owners on account of the taking, and the commissioners were directed to meet in the office of the clerk of court on March 13, 1944, to ascertain and report such damages.

It was further ordered:

"A.

"That the state prepare and file in these proceedings with the clerk of this court and supply to petitioner's counsel a copy thereof, a topographical and contour map showing elevations and other pertinent data of petitioner's lands within and below the heights and limits of the waters impounded and controlled by said project described in these proceedings and the Whetstone project and effected by the maintenance and control thereof.

"B.

"That the state prepare and file herein on or before said date complete plans, specifications, cross sections, profiles and elevations of all dikes, dams, spillways, and other structures built and maintained and operated showing (by reference to sea level datum or otherwise) the height at which the waters have been or can be kept and maintained since the construction of the project described herein and the Whetstone project and their operation and maintenance by the State.

"C.

"That if the State desires to obtain the ownership in fee of any of the lands thus taken, acquired, used and damaged by said projects, it should within said period of time specify, define, designate, and describe the acreage, area, location and description thereof on said map, and that in the event no such or other designation is made, the estate to be acquired by the State in said lands shall be a flowage easement and that the owner of said lands shall retain therein all the rights and privileges which appertain to ownership of the fee in said lands subject and in subordination to the use of said land for flowage purposes."

In their form, the several orders followed very closely similar

orders made in the Big Stone county proceeding reviewed by this court in the Bentley case, *supra*.

On March 14, 1944, the state served upon each petitioner in intervention a notice of motion (returnable March 18)—

"for an order permitting the State of Minnesota to file and interpose its proposed answer, a copy of which is hereunto attached and made a part hereof and for an order fixing a time and place for the court to hear and determine to what extent, if any, the lands of said petitioners in intervention herein have been taken, damaged or destroyed by the State of Minnesota in connection with the construction, maintenance and operation of the so-called Whetstone Diversion Project, the Big Stone Lake Dam Control Project, the Lac qui Parle Dam Control, and the Marsh Lake Dam Control, or by any other act or omission on the part of the State of Minnesota, its officers, agents or employees and thereafter if the court shall determine that said lands have been so taken, damaged or destroyed, to fix the extent thereof and appoint commissioners to ascertain and determine such damages and for the further order of this court, suspending and holding in abeyance the order of this court dated February 16, 1944, granting petition for enlargement of above proceedings and appointing commissioners until determination of this motion."

The notices of motion were accompanied by a proposed answer containing a general denial, followed by an express denial that the state had flooded or otherwise interfered with the usefulness of the lands of the petitioners in intervention. The answer alleged the fact to be that the state, by the operation and maintenance of its public works, had reduced the volume of water which would have reached said lands in a state of nature.

The state also procured an order, dated March 9, 1944, and served on petitioners in intervention on March 14, requiring them to show cause, on March 18, why an order should not be made granting the relief sought by the state's motion. The order to show cause expressly provided that "the order of this court dated February 16,

1944, granting petition for enlargement of above proceedings and appointing commissioners be suspended and held in abeyance until further order of the court herein."

On July 8, 1944, the court filed its order, dated July 6, 1944, whereby the state's motion was denied and the accompanying order to show cause vacated and set aside. Within four days, and on July 12, 1944, the state served a notice of appeal from the order of July 6. This order denied the motion of the state to vacate and set aside the order of February 16, 1944, under which the court allowed intervention, determined that the state had taken and damaged lands belonging to petitioners in intervention, appointed commissioners, and ordered the state to prepare and furnish maps and specifications. The order appealed from also *denied to the state the right to file and interpose its proposed answer to the petitions in intervention.*

In moving for dismissal of the state's appeal, interveners urge (1) "that the order granting a motion to intervene in a condemnation proceeding is not appealable," and (2) "that the order refusing to vacate an order appointing commissioners in a condemnation proceeding is not appealable." It is apparent that the order appealed from is more than an order granting a motion to intervene in a condemnation proceeding, or a mere order refusing to vacate an order appointing commissioners in such a proceeding. As we see it, the question to be determined by us on this appeal does not involve primarily the appealability of an order allowing intervention or appointing commissioners. The order appealed from includes an order denying the state the right to interpose and file an answer to the petitions in intervention, in which proposed answer the state specifically denied that interveners' lands had been damaged by the state's installations. The state has properly moved for an order permitting it to file and interpose its proposed answer. The question presented to us involves the appealability of an order denying to the state the right to interpose an answer to the petitions in intervention. The state had originally appeared specially questioning the jurisdiction of the court to permit intervention. It

had also interposed demurrers to the interveners' petitions. Immediately upon receiving notice of the court's order overruling its special appearance, the state moved for an order permitting it to interpose and file its answer to the petitions in intervention. By its special appearance and its demurrers, the state intended to and did raise the question whether, assuming the facts alleged in the petitions for intervention to be true, it was within the power of the court to permit intervention. By its motion, made after its special appearance was overruled and while its demurrers were still undisposed of, it sought the privilege to challenge—by answer and proof—the facts alleged in the petitions for intervention. At the time the state requested permission to file and interpose its proposed answer, it was not in default.

This is the question involved: Can the sovereign state of Minnesota be denied its day in court upon the issue of whether or not the state has taken or damaged any of interveners' lands as the result of the construction and maintenance of the so-called Whetstone Diversion Project, etc., or any other project that has been constructed, maintained, or operated by the state?

■ Denying the state the right to litigate the issue of "taking" by refusing its request to interpose and file answers prevents a hearing on that question in the proceeding. It would seem that at some stage of the proceeding, in some way, the state should be given its opportunity to have its day in court. In proper procedure, it attempted to bring its contentions before the court. It was not in default. It had waived nothing. It was denied the right.

In 18 Am. Jur., Eminent Domain, § 326, the following rules are stated:

"Where questions other than that of compensation are properly to be tried in the condemnation proceeding, such as the necessity for condemnation, the legal existence of the corporation seeking the condemnation, etc., the view has been taken that an appearance and answer by the defendant is the better practice, and that *the defendant cannot be deprived of the right to appear in defense of his rights.*" (Italics supplied.)

And *Id.* § 331:

"The hearing in condemnation proceedings must be such as to meet the requirements of due process of law. There must be a hearing at some stage of the proceeding."

If an intervening property owner is given the right to appear in defense of his rights in a proceeding such as this, it is equally clear that we cannot deprive the state of its right to be heard on its contention that there was no taking or damaging of the lands of such intervening property owners. The requirements of due process forbid it. Where condemnation proceedings have been instituted by service of notice, Minn. St. 1941, § 117.07 (Mason St. 1927, § 6543), provides, as the next step:

"Upon proof being filed of the service of such notice, the court, at the time and place therein fixed or to which the hearing may be adjourned, *shall hear all competent evidence offered for or against the granting of the petition,* regulating the order of proof as it may deem best." (Italics supplied.)

In a situation where omitted landowners have been permitted to intervene in condemnation proceedings and the state denies the damage and the taking of their lands, there is no reason why the court should not also hear all competent evidence offered for and against the state's contention, preliminary to the appointment of commissioners, in the same manner as the hearing on the original petition by the state for condemnation is conducted.

In State, by Peterson, v. Bentley (Nos. 33,499, 33,523) 216 Minn. 146, 161, 12 N. W. (2d) 347, 355, *supra,* the state's motion for leave to answer was made after the appeal to this court had been perfected, and we held that it was properly denied because the lower court had lost jurisdiction. Upon application for reargument, the specific question was asked (216 Minn. 169, 12 N. W. [2d] 359):

"* * * whether the state is to be given the right 'to answer the petitions in intervention in all of the above entitled actions' so that not only the question of the actual taking may be litigated but

also, if the taking is shown, that the state may litigate the question of petitioners' damages for the property so taken."

Apparently losing sight of our previous disposition of the state's motion for leave to answer, we answered the posed question thus:

"The court below has determined upon adequate proof that there has been an actual taking and that the property so taken was for a public use. Only one question remains, *i. e.*, what is the value of each parcel of property so taken?"

That decision establishes "the law of the case" governing the proceeding in Big Stone county. But, upon careful reconsideration, we have now reached a contrary conclusion, and, insofar as the Bentley decision on application for rehearing announces a rule preventing the state—where it so elects—from answering a petition in intervention and from having a full hearing of matters as to which an issue is raised, the decision is overruled. We now hold that such right to answer and to have a hearing at which witnesses may be examined and cross-examined is the absolute right of the state, and that an order denying such right is appealable. Where the taking and damaging is not conceded and the state presents to the court its claim that interveners' property was neither taken nor damaged by the state's action, that issue should be heard and determined before commissioners are appointed to appraise the damage. Upon application by the landowners for permission to intervene, the preliminary question for the trial court to determine is whether the petitioners for intervention have made a prima facie showing entitling them to have their lands included in the proceedings. Of course, if the taking or the damage is conceded, as in State, by Benson, v. Stanley, 188 Minn. 390, 247 N. W. 509, the order finding that interveners' property had been taken or damaged would naturally follow. But where, as here, the fact of taking or damaging is persistently denied, the court should make no order finding that the property has in fact been taken or damaged before it has heard the state. Such a procedure would also afford the state an opportunity to change its plan of construction, if possible

and desirable, so as to erase the damage to interveners' land and make its condemnation unnecessary.

Interveners urge dismissal of the state's appeal on the ground that "the order granting a motion to intervene in a condemnation proceeding is not appealable" and "that the order refusing to vacate an order appointing commissioners in a condemnation proceeding is not appealable." As we have already stated, those questions are not here involved. The material question presented to us on the appeal is whether the trial court erred in refusing to permit the state to interpose its proposed answers setting out that interveners' property was neither taken nor damaged. That refusal is found in the order of the court dated July 6, 1944. The appeal from that order is, of course, within the statutory time for appeal. There is no occasion to consider any other questions raised by the motion to dismiss the appeal. If consideration of the question raised by this appeal, namely, whether the trial court deprived the state of its rights under the due process provisions of the constitution, cannot be had until there has been a final judgment of condemnation, a serious economic waste will result. It should not be necessary for the appellate court to wait until the entry of such judgment after a long-drawn-out trial before ordering a new trial because of a violation of the due process provisions of the constitution.

■ Where more land has been damaged in the construction of a road or any other public project than was included in the condemnation proceedings brought to acquire the necessary lands therefor, there is presented the question of how the aggrieved landowner is to be compensated. This court has held that the owner of the omitted lands may intervene by motion in the condemnation proceeding if such proceeding has not terminated by the filing of the final certificate provided for by statute. This procedure was first approved in State, by Benson, v. Stanley, 188 Minn. 390, 247 N. W. 509, *supra*, where this court in effect stated that such pro-

cedure seems appropriate and necessary in view of Minn. Const. art. 1, §§ 7, 8, and 13.[2]  It said at p. 394 (247 N. W. 510):

"* * * The state cannot, with decent regard for the due process of law provision, and the provision giving everybody a remedy for wrong done his property, and the special provision against the taking of property for public use without compensation, leave out property which it uses or damages in a public project and prevent the owner from having compensation, all because it cannot be sued."

This procedure was approved under the statute permitting intervention when the person petitioning therefor "may either gain or lose by the direct legal effect of the judgment therein." Minn. St. 1941, § 544.13 (Mason St. 1927, § 9263). Of course, as a matter of fact, the omitted landowner neither gains nor loses by the direct legal effect of the judgment in condemnation between the state and other landowners. That judgment does not affect him. He neither gains nor loses by it. But, in order that he may be properly compensated for land taken for public use or damaged, the court has permitted the adoption of this manner or method in effecting such result.

In State, by Peterson, v. Bentley, 216 Minn. 146, 159, 12 N. W. (2d) 347, 355, this court made the following observation:

"When there has arisen an apparent conflict between the rules that an individual may not sue the state without its permission, and that the state may not take or damage property without making just compensation therefor, other courts have arrived at the same

---

[2]Art. 1, § 7, provides in part that no person shall "be deprived of life, liberty or property without due process of law."

Section 8 thereof provides: "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely and without purchase; completely and without denial; promptly and without delay, conformable to the laws."

Section 13 thereof provides: "Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

conclusion as that reached in the Stanley case [188 Minn. 390, 247 N. W. 509]. The court in Riggs v. State Road Commr. 120 W. Va. 298, 197 S. E. 813, granted a writ of *mandamus* requiring institution of proceedings to ascertain damages caused by highway construction where the commissioner failed to do so within a reasonable time after completion of the work. The same relief was granted in Gould v. State Highway Comm. 112 N. J. Eq. 389, 164 A. 296. In State Road Dept. v. Tharp, 146 Fla. 745, 749, 1 So. (2d) 868, 870, the court said:

" 'American democracy is a distinct departure from other democracies in that we place the emphasis on the individual and protect him in his personal property rights against the State and all other assailants. The State may condemn his property for public use and pay a just compensation for it but it will not be permitted to grab or take it by force and the doctrine of nonsuability should not be so construed.' "

See, also, Hardy v. Simpson, 118 W. Va. 440, 190 S. E. 680, 191 S. E. 47. It is certainly not in accord with "American democracy" to permit the state to take private property by other than legal means and then to defend itself by a plea of nonsuability. The cases cited go even further than the Stanley case, which permits intervention in a pending proceeding, in that they permit a damaged landowner to compel the institution of proceedings by *mandamus*.

We have carefully considered the problems involved where the state has brought condemnation proceedings to acquire lands for a public project, and where, after the project has been completed, it is discovered that other lands have been taken or damaged. The owner of such omitted lands is, of course, entitled to compensation. The rights of the state must also be protected. The amount of damages and the extent of the taking must be determined. The procedure we have adopted in the past has created confusion in the minds of trial courts and members of the legal profession, to say nothing of our own. We think this case offers an opportunity to this court to supply a solution to a situation which has become

highly unsatisfactory. We believe the solution we offer is in the interests of justice and proper procedure. The instant case is being determined under the procedure that has received the approval of this court up to the present.

In State, by Peterson, v. Bentley, 216 Minn. 146, 12 N. W. (2d) 347, *supra*, quoted above, an intimation of a proper procedure is given. The courts of New Jersey and West Virginia have led the way and pointed out the method and manner in which the desired result may be reached. Instead of permitting intervention in condemnation proceedings by a person who claims his lands have been wrongfully omitted from the proceedings and taken or damaged in the construction of the public project, the duty of the highway commissioner or other state officers to include such premises is en-forceable by *mandamus*. The courts of the states above mentioned consider that under the legislative power delegated to the highway commissioner or other state officers in condemnation proceedings there is a mandatory duty imposed on them to include in such proceedings instituted by them *all* property affected by the proposed improvement, and that, by reason of such mandate, this duty becomes a ministerial one enforceable by *mandamus*.

In Haycock v. Jannarone, 99 N. J. L. 183, 185, 122 A. 805, 806, the court said:

"* * * The plaintiff's contention is that as it was held in Curtis & Hill, Gravel and Sand Co. v. State Highway Commission, 91 N. J. Eq. 421, 111 A. 16, the state highway commission was the *alter ego* for the state, and, as the state could not be sued, the owners [sic] only remedy would be against the person who actually trespassed, but this overlooks a very important consideration which is, that under the statute the *state highway commission, as an agency acting for the state, is bound to initiate condemnation proceedings in order to fix the compensation due landowners* whose land is taken for public use. Such an agency can be required by *mandamus* to take proper proceedings to condemn the land, *and in such proceedings the question whether there has been any encroachment can be settled by a jury on a proper issue framed.* Finger v.

Doane, 98 N. J. L. 635, 121 A. 455. When the damages have been thus ascertained *it is not to be presumed that the legislature has not, or would not, make provision to pay for the land* which it had *taken* in advance of compensation for the benefit of the state. The creation of such an agency with the power to condemn *implies that the legislature will make provision to pay the award,* otherwise we would have to assume that the state intended to violate the constitution by taking land without compensaiton, a thought not to be tolerated. Therefore there is nothing in the point that if this nonsuit be sustained the plaintiff would have no remedy. *His remedy is to require the state highway commission to fulfill their statutory duty,* which is to take proper proceedings to condemn the land." (Italics supplied.)

This case was followed in Gould v. State Highway Comm. 112 N. J. Eq. 389, 164 A. 296. West Virginia follows the same rule. See, Riggs v. State Road Commr. 120 W. Va. 298, 197 S. E. 813.

Minn. St. 1941, § 117.03 (Mason St. 1927, § 6539), provides that when property is required by the state for any authorized purpose the attorney general, at the request of the officer charged with the execution of the purpose, shall institute condemnation proceedings. The *duty* of the public officials to pay the award is, by the terms of § 117.20(3), (§ 6557-1[c]), held and construed to be full and just compensation. This, of course, was to comply with the constitutional requirement that compensation be secured before taking.

Taking all the statutory provisions together, it seems not too great a strain on the judicial conscience to hold that *it is the ministerial duty of the commissioner to start condemnation proceedings against land that he has already subjected to damage for highway purposes.* If so, then *mandamus* will lie, and in the proceeding all issues may be determined.

In this state, a writ of *mandamus* is a civil action, which gives the state officers an opportunity to answer and set up either that the land was not damaged or that the state proposes to remedy or has remedied the construction which causes the damage, and there-

fore that it does not seek to acquire an easement or title. The issues so raised may thus be tried in the ordinary way by witnesses subject to cross-examination. The issues raised by an omitted landowner in *mandamus* are issues of fact on the merits and are not properly triable by affidavit. Lende v. Canby Hereford Farms Co. 177 Minn. 318, 225 N. W. 150; Beigler v. Chamberlin, 145 Minn. 104, 176 N. W. 49; Streissguth v. Chase Securities Corp. 198 Minn. 17, 268 N. W. 638. Then, too, if the state officer admits the damage and the necessity of acquiring a permanent easement, he will be in a position to define in his answer the extent of the easement necessary to the project. If the extent of the area subjected to damage is put in issue by reply, that issue can be determined before the question of damages is referred to the commissioners appointed to assess the damages. It is not the function of commissioners to determine the area subjected to the easement. It is their sole function to assess the damages. By adopting the New Jersey and West Virginia procedure, we would establish a practice which would be orderly and fair to all parties concerned. Disposition of the issues would not leave to the commissioners the task of determining the extent of the easement to be acquired by the state—a task not within the scope of their statutory duties. There would then be no confusion in the minds of the trial courts or of the lawyers. They would proceed with assurance.

The New Jersey and West Virginia cases do not justify intervention though they are cited in support of it in our decision in the Bentley case. They approve of a proceeding by *mandamus* on the theory that the officer's duty is ministerial.

In our opinion, State, by Hilton, v. Voll, 155 Minn. 72, 192 N. W. 188, offers no obstacle to the theory of *mandamus* to the commissioner of highways to compel him to start condemnation proceedings to acquire land or easements when property is taken or damaged. In that case the challenge was to the public use. The court held that the use was public and that the commissioner was the agent of the state to whom the legislature had delegated the right to designate the route. There is nothing in the opinion that con-

tradicts the theory that, after designating the route and formulating the plans, his duty to start condemnation does not become imperative and, consequently, ministerial. The commissioner's selection of the route of the highway and the making of the plan of construction is a discretionary act and duty; but if the construction of the project takes or damages other property not included in the condemnation proceedings, his duty to condemn such property may be compelled by *mandamus*.

For a number of years, this court has held that intervention by motion in a pending condemnation proceeding is a proper procedure to be taken by the owner of omitted lands. We are now holding that an action in *mandamus* will lie, and that owners of such omitted property must resort to that remedy. It is understood, however, that this change in procedure will not affect pending actions in which the courts already have permitted owners of omitted property to intervene by motion.

In determining that the order of the lower court affected a substantial right of the state in such a manner as to render the order appealable, we have unavoidably laid down rules which also point to the necessity of a reversal of the order appealed from. Therefore, unless one or both of the parties within ten days after the filing of this decision indicate in writing a desire to be heard further on other issues presented by the appeal, a reversal will also be entered.

Motion to dismiss appeal denied.

Mr. Justice Peterson took no part in the consideration or decision of this case.