## MILLARD T. WOLFRAM AND ANOTHER v. STATE, BY J. A. A. BURNQUIST, ATTORNEY GENERAL, AND ANOTHER.[1]

January 27, 1956.

No. 36,674.

*Timothy T. Flynn,* for appellants.

*Miles Lord,* Attorney General, *Robert W. Mattson,* Deputy Attorney General, and *Bert McMullen,* Special Assistant Attorney General, for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment entered pursuant to an order of the district court granting a motion for summary judgment for the State of Minnesota by its attorney general and the commissioner of highways.

The case arises out of a petition for a writ of mandamus describing certain property owned by petitioners, Millard T. Wolfram and

---

[1]Reported in 74 N. W. (2d) 510.

Marion L. Wolfram, with the purpose of directing respondent state to institute a condemnation proceeding against the property.

The main allegation of the petition and writ is to the effect that the taking of property adjacent to the Wolfram property and the construction of the highway thereon places petitioners' property in a circle of heavily traveled highways, thus damaging their property right of ingress and egress. The affidavits and exhibits present the following situation:

State Trunk Highway No. 100 has been established for a long time. The main traveled portion where it intersects with Cedar Lake Road, known also as County Road No. 16, lies somewhat westerly of petitioners' property. The north line of the Wolfram property abuts on Cedar Lake Road. Because of the dangerous intersection of State Trunk Highway No. 100 and Cedar Lake Road, an agreement was made in August 1952 and an amended agreement was made on September 17, 1953, by the county of Hennepin and the State of Minnesota for a grade separation of that intersection. The location of the grade separation was to be south of the existing intersection, with the relocation of County Road No. 16 under a bridge where State Trunk Highway No. 100 crosses the tracks of the Great Northern Railway Company. By these agreements the county was to acquire the necessary right-of-way for County Road No. 16 and construct the same on the new location, and the state was to make such alterations in the bridge as required and do the construction work on State Trunk Highway No. 100 in connection with the new intersection.

The result of this plan was that the present so-called Cedar Lake Road would continue in the same place to State Trunk Highway No. 100, but the new County Road No. 16 would branch off somewhat easterly of petitioners' property and from that point run in a southwesterly direction toward the bridge referred to above and thus cut across the southeast corner of petitioners' property. In accordance with the above agreement, the county procured the necessary right-of-way for the relocation of County Road No. 16 and obtained a deed of highway easement from petitioners across the southerly or back

portion of their land. The consideration for this easement was $3,820, and it contained a complete release by petitioners of any damages by reason of the location and construction of County Road No. 16 across their property. In order to connect State Trunk Highway No. 100 with the grade separation and to connect it with County Road No. 16, it was necessary that the state widen State Trunk Highway No. 100 at that location. Therefore, the commissioner of highways made an amended width order dated October 29, 1953. The result is that, as a part of a "clover leaf," there will be a curved roadway near the west boundary of petitioners' property.

The situation thus presented is that abutting petitioners' property to the north is the so-called Cedar Lake Road, which was in existence before the controversy arose; that abutting petitioners' property to the south is the new County Road No. 16, for which petitioners have been fully compensated and have given the county a full release of all claims arising from the location of this road; and that near petitioners' property to the west is the proposed roadway, which would be a part of the "clover leaf" to be constructed by the state highway department. Under these facts it is the contention of petitioners that the state should be compelled to institute condemnation proceedings against their property on the ground of increased traffic and diminution of the value of their property.

The trial court granted summary judgment. The basis for this ruling is to be found in the memorandum of the court, which states:

"* * * one does not have a *right* which is 'taken, destroyed or damaged' under Article 1, Sec. 13, of the Minnesota Constitution where none of his property is taken by a state highway laid out upon adjacent lands not owned by him."

The only issue on appeal is whether the court erred in so concluding.

Minn. Const. art. 1, § 13, as amended in 1896, provides:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

Petitioners conceded on oral argument that no physical part of their property had been taken or used by the roadway to be estab-

lished by the state near their west boundary line. It was also conceded that their only damage, if any, consisted of increased traffic surrounding their property and a resultant decrease in the value of their property. Petitioners cite no cases which have held that damages must be awarded for increased traffic only, where no actual part of the property is to be taken. It is their position, however, that Minn. Const. art. 1, § 13, as amended, and the cases decided thereunder are broad enough to cover the situation presented here.

Recovery has been allowed in this state in an action at law for consequential damage to a property owner's right of ingress and egress by reason of a change of grade or vacation of a street. Collins v. Village of Richfield, 238 Minn. 87, 55 N. W. (2d) 628; Dickerman v. City of Duluth, 88 Minn. 288, 92 N. W. 1119; Vanderburgh v. City of Minneapolis, 93 Minn. 81, 100 N. W. 668; Vanderburgh v. City of Minneapolis, 98 Minn. 329, 108 N. W. 480, 6 L.R.A.(N.S.) 741; Sallden v. City of Little Falls, 102 Minn. 358, 113 N. W. 884, 13 L.R.A.(N.S.) 790; Wallenberg v. City of Minneapolis, 111 Minn. 471, 127 N. W. 422, 856; Austin v. Village of Tonka Bay, 130 Minn. 359, 153 N. W. 738; Maguire v. Village of Crosby, 178 Minn. 144, 226 N. W. 398.[2] It is clear in this state that the right to damages is not dependent upon physical injury to the corpus of the property affected and that a recovery may be had where private property has sustained a substantial damage by the making and using of an improvement which is public in its character. Stuhl v. G. N. Ry. Co. 136 Minn. 158, 161 N. W. 501, L. R. A. 1917D, 317; Dickerman v. City of Duluth, *supra*. However, it must be noted also that not every diminution in the value of property caused by public improvement entitles the owner to recover. McCarthy v. City of Minneapolis, 203 Minn. 427, 281 N. W. 759. Since this is a proceeding on a motion for summary judgment, we must assume that an increase in traffic

[2]When the state, as distinguished from a city or a county, has taken, destroyed, or damaged private property without just compensation, the proper procedure is mandamus, as has been followed in this case. State, by Peterson, v. Anderson, 220 Minn. 139, 19 N. W. (2d) 70. See, also, in regard to counties, Johnson v. County of Steele, 240 Minn. 154, 161, 60 N. W. (2d) 32, 38.

will result[3] on the roads abutting petitioners' property because of the state's proposed construction of the roadway in question. The issue then becomes whether, in the situation here, the increase in traffic may be considered to have damaged petitioners' right of ingress and egress. As stated above, petitioners cite no cases, nor has this court been able to discover any so holding.

Petitioners argue, however, that a person attempting to reach their premises on foot must hazard the crossing of a superhighway and expose himself to great danger from swiftly moving motor vehicles. It is well settled that, to entitle a party to compensation on the ground that his property has been damaged for a public use, he must have sustained special damage with respect to his property different in kind from that sustained by the public generally. Underwood v. Town Board of Empire, 217 Minn. 385, 14 N. W. (2d) 459; 6 Dunnell, Dig. (3 ed.) § 3049, and cases cited; 4 Nichols, Eminent Domain (3 ed.) § 14.1, and cases cited in note 1. In the case at bar it is clear that any member of the general public seeking to cross the road under consideration here would suffer the same inconvenience as persons crossing the highways to petitioners' property. In our opinion, any so-called damage or inconvenience suffered by petitioners would not be substantial or different in kind from that suffered by the public at large, and, therefore, the judgment of the district court must be affirmed.

Affirmed.

---

[3]Abdallah, Inc. v. Martin, 242 Minn. 416, 65 N. W. (2d) 641.