373 P.2d 569

Vince **TURCOTTE** and Ruth Turcotte, husband and wife, Plaintiffs-Appellants,

v.

**STATE** of Idaho, a commonwealth, the People of the State of Idaho, acting by and through the Department of Highways, Defendant-Respondent.

No. 9043.

Supreme Court of Idaho.

July 23, 1962.

Thomas Mitchell, Coeur d'Alene, for appellants.

Andrew M. Harrington, Chief Legal Counsel for Dept. of Highways, Boise, for respondent.

**KNUDSON, Justice.**

Appellants as owners of 84 acres of farm land used for the production of domestic hay, commenced this action to recover damages resulting from alleged destruction of growing crops and permanent damage to their land.

During the fall of 1956 respondent commenced the construction of 7.184 miles of U. S. Highway No. 10 in Kootenai County, a portion of which is located east of Fourth of July Summit and along the course of Fourth of July Creek which flows through appellants' land here involved. The highway construction was some distance upstream from appellants' property. Appellants allege that during and by reason of such construction dirt, mud, sand, clay and debris were washed down into said creek which flooded appellants' lands lying down stream depositing thereon silt, mud, clay and debris to the extent such damage constituted a taking of appellants' property.

Judgment was entered upon the jury's verdict in favor of respondent and against appellants, from which this appeal is taken.

Appellants' argument in their brief is directed to a discussion of three questions which they contend are the principal issues raised by this appeal. The questions are:

1. Do the facts as stated show a taking as a matter of law?

2. Even if not proved as a matter of law, is the question of whether there is a "taking" proper matter for jury determination?

3. What, by law, constitutes a "taking" and, therefore, a proper definition of a "taking"?

In discussing the first question appellants' argument is confined to a brief statement that either the impairment of the usefulness of the fence or the impairment of the use of the land by the deposit of silt, or the impairment of drainage constituted a taking. Appellants introduced testimony which tended to support their allegations that some impairment to the fence, land and drainage had taken place by reason of the flooding. However respondent introduced evidence which contradicted the contention that flooding caused any permanent invasion of the property involved and the

jury, after viewing the premises concluded against appellants' claims.

■ A "taking" of property within the meaning of the Federal (5th Amendment) and State (Art. 1, § 14) Constitutions has been variously defined, however, we know of no one definition which would be adequate and proper to cover all factual conditions which may arise. It is generally recognized that there may be a taking of property in the constitutional sense although there has been no actual entry within its bounds and no artificial structure has been erected upon it. A general definition which may be considered applicable in the instant case is stated in 18 Am.Jur., 759, § 134 as:

"When a public agency acting under authority of statutes uses land which it has lawfully acquired for public purposes in such a way that neighboring real estate, belonging to a private owner, is actually invaded by superinduced additions of water, earth, sand, or other material so as effectually to destroy or impair its usefulness, there is a taking within the meaning of the Constitution. * * * But to create an enforceable liability as for a taking, it is necessary that the overflow be the direct result of the structure, and constitute an actual, permanent invasion of the land, amounting to an appropriation of, and not merely an injury to, the property."

In Sanguinetti v. United States, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608, the Supreme Court of the United States had under consideration a judgment of the Court of Claims denying compensation for alleged taking of property resulting from overflowing of appellant's land and said:

"* * * in order to create an enforceable liability against the government, it is at least necessary that the overflow be the direct result of the structure, and constitute an actual, permanent invasion of the land, amounting to an appropriation of and not merely an injury to the property."

The Court further stated:

"The most that can be said is that there was probably some increased flooding due to the canal and that a greater injury may have resulted than otherwise would have been the case. But this and all other matters aside, the injury was in its nature indirect and consequential, for which no implied obligation on the part of the government can arise."

See also, Coates v. United States, 110 F. Supp. 471, 124 Ct.Cl. 806; Crites v. United States, 132 F.Supp. 469, 132 Ct.Cl. 544; and B Amusement Co. v. United States, Ct. Cl., 180 F.Supp. 386.

■ In the instant case it was not established that the overflow was the direct

and necessary result of the work being carried on by respondent. The evidence disclosed that prior to the construction work the land, to some extent, had been subject to periodical overflow and that unusual rainfall was responsible for the excessive volume of water causing the overflow complained of. The most that can be said is that there was probably some increase in the amount of earth or debris which was carried downstream as a result of respondent's construction but there is no competent proof as to what, if any, increase directly resulted from the highway construction. The evidence introduced by the parties was conflicting and it has been carefully examined. From the record it clearly appears that there is competent evidence to support the conclusion reached by the jury.

■ Appellants argue that the question of whether there has been a taking is not a matter for jury determination. This contention is without merit. Appellants liken the question of whether there has been a "taking" to the proceedings in the normal condemnation action where the determination as to whether the proposed use is authorized by law and if the taking is necessary for such use are judicial questions. Although actions of this kind are based on the theory of inverse condemnation the issues are not identical with proceedings in eminent domain.

■ In determining the question of whether parties are entitled to a trial by jury, courts must look to the ultimate and entire relief sought. Johansen v. Looney, 30 Idaho 123, 163 P. 303; Cleland v. Mc-Laurin, 40 Idaho 371, 232 P. 571; Cooper v. Wesco Builders, 76 Idaho 278, 281 P.2d 669. Therefore, in determining this contention the court must be guided by the averments of appellants' complaint and the body or substance of the relief they are seeking. The relief here prayed for is damages. (See Pacific Northwest Pipeline Corporation v. Waller, 80 Idaho 105, 326 P.2d 388) If the case were one against a private individual his responsibility, if any, would be in tort. Appellants made no objection to the submission of the question of a taking to the jury, in fact, they submitted requested instructions as to what constituted a "taking" of their property which were intended to guide the jury in determining such issue.

Error is claimed in giving part 3 of instruction No. 8 in that it sets up an improper test of what constitutes a taking. The relevant portion of said instruction reads:

"In order to find such a taking you must determine:

\*　　\*　　\*　　\*　　\*　　\*

"(3) That said deposits are of such a nature that at least some portion of

plaintiffs' land is permanently damaged, i. e., permanently lessened in value."

This assignment is not separately discussed in appellants' brief and their precise objection to the instruction is not pointed out. The record is convincing that this case was predicated and tried upon the theory that the appellants' land had been permanently damaged by action of respondent. In appellants' complaint as a basis for their action it is alleged that respondent's construction work resulted in the taking of appellants' property *"by further permanently and irrevocably damaging the land* of said 84 acres."

Appellants' contention as to the basic fact issues which are created by the pleadings is shown in paragraph III of Pretrial Order as follows:

"A. Did plaintiffs own the land in question at the times alleged in the complaint?

"B. Did construction of the road cause increased silt, mud, clay and debris to be deposited in the waters of Fourth of July Creek, which settled in and filled the creek bed, and where at flood time were deposited and settled upon plaintiffs' land?

"C. If so, did the filling of the creek bed prevent normal drainage, and did the silt, mud, clay and debris destroy the existing crops, and do *permanent damage* to the land?

"D. If *permanent damage* was done, and existing crops were lost, what was the dollar value of such damage and loss?" (emphasis supplied)

■ Furthermore, part 3 of said instruction was requested by appellants and they cannot now be heard to complain. Neff v. Hysen, 72 Idaho 470, 244 P.2d 146; State v. Johnston, 61 Idaho 87, 98 P.2d 628; State v. Orr, 53 Idaho 452, 24 P.2d 679.

In support of their contention that any destruction, interruption or deprivation of the common, usual and ordinary use of property constitutes a taking in the violation of the constitutional guaranty, appellants cite: Renninger v. State, 70 Idaho 170, 213 P.2d 911; Hughes v. State, 80 Idaho 286, 328 P.2d 397; and Farris v. City of Twin Falls, 81 Idaho 583, 347 P.2d 996. These cases do not support such contention. In Renninger v. State, supra, a permanent and irreparable injury to the land was involved, and in the other two cases cited the complaint alleged that rights of access to property (being an estate or interest in and appurtenant to real property) had been destroyed by action of the defendants.

■ There is no merit to appellants' claim that the giving of instructions No. 10 or No. 24 was error. Appellants do not

point out wherein either of these instructions is erroneous. Instruction No. 10 directs that there was a "taking" of appellants' land if it had been damaged in such a manner as permanently to decrease its market value. Instruction No. 24 instructs the jurymen that any knowledge obtained by their view of the premises may be used only for the purpose of determining the weight and applicability of the evidence introduced at the trial of the cause.

Appellants complain that their requested instruction No. 3 was not given. It is as follows:

> "You are instructed that the deposit of silt, mud, clay and debris in the path and channel of Fourth of July Creek in such places and in such quantities as to impede the drainage of plaintiffs' land from annual flood waters can constitute a taking of plaintiffs' property."

Under its language a taking would be effected if the drainage was in any degree and for any period of time merely hindered or interfered with irrespective of the cause. Said requested instruction does not correctly state the law applicable and was properly refused.

Appellants' requested instruction No. 5 was in fact a directive to the jury that a taking of appellants' land by respondent had been established as a matter of law and the only question for the jury to determine was the amount of damages to be allowed. Said requested instruction and appellants' motion for a directed verdict were properly refused. The conflicting evidence was properly submitted to and considered by the jury.

We find no error. The judgment is affirmed. Costs to respondent.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.