# FRED L. THOMSEN v. STATE, BY DOUGLAS M. HEAD, ATTORNEY GENERAL.

170 N. W. (2d) 575.

September 5, 1969—No. 41576.

*Douglas M. Head,* Attorney General, *Donn D. Christensen,* Deputy Attorney General, *Richard H. Kyle,* Solicitor General, and *James M. Kelley,* Special Assistant Attorney General, for appellant.

*Spellacy, Spellacy & Lano* and *John A. Spellacy,* for respondent.

PETERSON, JUSTICE.

Appeal from a judgment directing the state to commence condemnation proceedings against plaintiff's land.

In 1954 plaintiff, a Coleraine building contractor, began constructing a home for himself on a triangular lot in the village of Coleraine. This lot was bounded on two sides by opened, usable streets, and the third side abutted on Corey Avenue, a street dedicated in 1906 but never opened. Coleraine had no building code, but plaintiff got permission from the village engineer to construct this house at a site on his lot which was marked out by stakes. Apparently both plaintiff and the engineer failed to anticipate that Corey Avenue would ever be opened as a public street or highway since the house was knowingly built touching or encroaching slightly upon its right-of-way.

In 1958 the state began engineering studies preparatory to construction of a new route for Trunk Highway No. 169 around and through the village of Coleraine. Plaintiff's house and several buildings owned by others were located directly in the path of the originally proposed route. Therefore, the highway centerline was moved to the north and west so that its traveled portion would not cross plaintiff's land. Plaintiff's house would still have been within the normal right-of-way of the highway, however, if the state (in an apparent attempt to avoid physically appropriating any of plaintiff's property and the consequent necessity of condemning it) had not narrowed the right-of-way so that as

the highway passed plaintiff's home it was entirely within the right-of-way of Corey Avenue.[1]

When the four-lane trunk highway was completed, the traveled portion passed within 10 feet of the bedroom of plaintiff's home, and the right-of-way was within 5 feet thereof. In addition, the grade of the highway was lowered slightly below the level of plaintiff's property, and a wire fence was erected between the highway and plaintiff's home. Even before construction of the highway, plaintiff, protesting that it would pass too close to his home, asked the highway department to change the route of the highway or otherwise to pay him damages or to purchase his property. The highway was constructed as planned, but the state refused either to condemn plaintiff's property or to pay him damages.

Plaintiff then brought this action, in essence seeking a writ of mandamus compelling the state to institute condemnation proceedings against his property pursuant to Minn. St. c. 117 on the ground that he was damaged by diminution in the postconstruction market value of his property. This diminution, he claimed, was due to (1) loss of his right of access to the highway occasioned by the construction of the wire fence; (2) snow piled on his property as the result of plowing the highway during the winter; (3) loss of lateral support due to the lowered grade of the highway; and (4) the increased volume, speed, and noise of traffic around his house.

The trial court, after hearing, ordered the state to institute condemnation proceedings based upon this finding:

"That by its actions as aforesaid, the State of Minnesota *may have caused consequential damages* to the Plaintiff-Petitioner's property owner's right which may be peculiar to him and not to the general public." (Italics supplied.)

The state immediately filed an appeal but then, because of doubt that the judgment was appealable as of right, petitioned

---

[1] The state had taken over Corey Avenue from the village of Coleraine in 1965, pursuant to Minn. St. 161.18.

for and received permission from this court to appeal under Rule 105, Rules of Civil Appellate Procedure.

■ Minn. Const. art. 1, § 13, as amended in 1896, provides: "Private property shall not be *taken, destroyed or damaged* for public use without just compensation therefor, first paid or secured." (Italics supplied.) The undisputed evidence amply sustains the trial court's finding that there was no actual physical taking of plaintiff's property. Neither the roadway itself nor the right-of-way actually encroached upon plaintiff's property. However, even though none of plaintiff's property was actually physically appropriated, the state can still be ordered to institute condemnation proceedings if the construction or use of the highway "damaged" plaintiff's property in the constitutional sense. Hendrickson v. State, 267 Minn. 436, 127 N. W. (2d) 165; State, by Lord, v. Casey, 263 Minn. 47, 115 N. W. (2d) 749; 4 Nichols, Eminent Domain (Rev. 3 ed.) § 14.1[1].

Plaintiff does not contend that there has been any physical damage to his house as the result of the construction or use of the highway.[2] He does, however, argue that he is entitled to damages for a taking of his right of access to the new highway, citing Hendrickson v. State, *supra.* However, since there never had previously been an opened street or highway along this side of plaintiff's property, the state took no existing access from plaintiff. In addition, although the new highway has not been formally designated as a "limited access" highway, plaintiff has never requested that the state allow him direct access from his property. Therefore, it is clear that plaintiff has not established that he has been deprived of any right of access for which he should have been compensated.[3]

---

[2] Compare, Richmond County v. Williams, 109 Ga. App. 670, 137 S. E. (2d) 343.

[3] See, Linge v. Iowa State Highway Comm. 260 Iowa 1226, 150 N. W. (2d) 642; Lehman v. Iowa State Highway Comm. 251 Iowa 77, 99 N. W. (2d) 404; D'Arago v. State Roads Comm. 228 Md. 490, 180 A. (2d) 488; State v. Calkins, 50 Wash. (2d) 716, 314 P. (2d) 449. See, also, Wisconsin Town House Builders, Inc. v. City of Madison, 37 Wis. (2d) 44, 154 N. W. (2d) 232.

Plaintiff also contends that his property has been damaged because during the winter snow would likely be plowed up onto his property from the highway. Plaintiff's testimony, however, indicates that at the time of the hearing no snow had ever actually been piled on his property due to plowing of the highway, even though a winter had passed since the highway was opened. Plaintiff introduced no evidence on the precise amount, if any, by which any future plowing would reduce the market value of his property. Therefore, any award based on this claim would be purely speculative. Remote, conjectural, or speculative damages are not recoverable in a condemnation action unless the certainty that they will occur is soundly established. State Highway Comm. v. Antonioli, 145 Mont. 411, 401 P. (2d) 563; 5 Nichols, Eminent Domain (Rev. 3 ed.) § 18.42[1]. Plaintiff is not foreclosed from bringing a separate damage action if, in the future, snow should be piled on his property causing direct, substantial, and peculiar injury to it.

In addition, while it is clear that deprivation of lateral support can amount to damage in the constitutional sense, Morgan v. City of Albert Lea, 129 Minn. 59, 151 N. W. 532, there is no evidence, beyond plaintiff's mere contention, that the slight lowering of the grade of the highway below the level of his property deprived his house of lateral support. Not every change in the grade of a highway entitles abutting property owners to compensation. In order to be compensable, the change, unlike the one involved in this case, must be material and must give rise to direct and substantial consequential damages. Board of County Commrs. of Dona Ana County v. Little, 74 N. Mex. 605, 396 P. (2d) 591.

■ Finally, plaintiff argues that the value of his property has been decreased by the flow of traffic on the newly constructed highway. It is clear, however, that not every conceivable kind of injury to the value of adjoining property resulting from highway construction is "damage" in the constitutional sense. Wolfram v. State, 246 Minn. 264, 74 N. W. (2d) 510; McCarthy

v. City of Minneapolis, 203 Minn. 427, 281 N. W. 759. Thus, while a reduction in property values may result from the noise, light, vibration, or fumes produced by the proximity of increased vehicular traffic on a newly constructed highway, such consequential damage is not usually treated as "damage" in the constitutional sense. State ex rel. State Highway Comm. v. Turk (Mo.) 366 S. W. (2d) 420; State v. Williams, 22 Utah (2d) 331, 452 P. (2d) 881. See, Wolfram v. State, *supra;* McCarthy v. City of Minneapolis, *supra.* Noise, light, vibration, and fumes from traffic on modern four-lane highways are "inconveniences that are reasonably incident to the prosecution of necessary public enterprises," and as such must be and are borne by the public at large. Stuhl v. Great Northern Ry. Co. 136 Minn. 158, 163, 161 N. W. 501, 503. The cost of compensating all owners of property adjacent or proximate to newly constructed highways affected by these side effects would be so prohibitive that it would effectively halt the construction of highways by the state. See, Northcutt v. State Road Dept. (Fla. App.) 209 So. (2d) 710. See, also, McCarthy v. City of Minneapolis, *supra.* Therefore, it has been held that in order for an omitted property owner to force a condemnation and thereby recover for such consequential damage to his property, the damage must be direct, substantial, and peculiar to him, in that it differs markedly from the damage suffered by the public at large as a result of the construction of the highway. See, City of Crookston v. Erickson, 244 Minn. 321, 69 N. W. (2d) 909.

The facts of this case are somewhat unique. The state intentionally altered the route of the highway to avoid plaintiff's property and substantially narrowed its right-of-way as the highway passed plaintiff's house in order to avoid taking any of plaintiff's property. This permitted traffic on the new four-lane highway to pass within 10 feet of plaintiff's bedroom, resulting in both annoyance and hazard to its occupants. The headlights of oncoming vehicles shone into plaintiff's bedroom windows, and the unremitting sound of traffic passing on the

highway continued throughout the day and night. In addition, the state erected only a wire fence to protect plaintiff's home from any vehicle which, while traveling 40 to 45 miles per hour, might leave the road. On the other hand, it is also undisputed that plaintiff, a knowledgeable building contractor, intentionally built his house touching and even encroaching slightly upon the right-of-way of a dedicated but unopened street which could have been opened at any time.

While ordinarily an adjoining property owner could not recover from the state solely because the value of his property is decreased by noise and light from traffic on a newly constructed highway, whether plaintiff's property has been so unfairly, directly, substantially, and peculiarly injured that it has been damaged in the constitutional sense so that the state should be compelled to condemn it is, given all of the undisputed but highly unusual facts of this case, a question of law which must be determined by the mandamus court in the first instance.[4]

---

[4] See, State, by Peterson, v. Anderson, 220 Minn. 139, 19 N. W. (2d) 70; People v. Ricciardi, 23 Cal. (2d) 390, 144 P. (2d) 799; Breidert v. Southern Pacific Co. 61 Cal. (2d) 659, 39 Cal. Rptr. 903, 394 P. (2d) 719; Brock v. State Highway Comm. 195 Kan. 361, 404 P. (2d) 934. As stated by the Kansas court (195 Kan. 366, 404 P. [2d] 940): "* * * Whether or not a governmental agency has exceeded its police power and taken private property for public use is a question of law for the determination of the court under the existing facts and circumstances of the particular case. Not until the trial court determines that private property has been taken for public use is the question of the amount of damages ripe for the determination of a jury.

"In all condemnation cases the only question presented for the jury's determination is the loss to the owner because of the property taken. The fact that there was a taking has been previously determined by the court."

In other jurisdictions whose procedures for inverse condemnation differ markedly from ours, the question of whether or not the injury to the plaintiff's property amounts to a "taking" or "damage" in the constitutional sense has been treated as an issue of fact and submitted to the jury. See, e. g., Thornburg v. Port of Portland, 244 Ore.

Plaintiff argues that it is the lay commissioners, or the jury if either the state or the property owner obtains a trial de novo after the commissioners' decision,[5] who must decide whether or not the state has taken or damaged the property in question, citing dicta to that effect in Hendrickson v. State, *supra*. This dicta, which has created some misunderstanding, does not properly express the rule in this state.

The difficult task of deciding whether or not there has been a taking in the constitutional sense and what, if anything, has been taken should not be left to lay commissioners, whose sole function is to assess the amount of monetary damages to which a property owner is entitled.[6] As we pointed out in State, by Peterson, v. Anderson, 220 Minn. 139, 19 N. W. (2d) 70, such issues, raised by an omitted landowner in a mandamus proceeding, must be decided upon their merits by the mandamus court before an order compelling condemnation may be issued. It is only in those cases in which the mandamus court finds that there has been a taking or damage in the constitutional sense that it may compel the state to initiate condemnation proceedings.

Plaintiff argues that this procedure deprives him of his right to a jury trial. However, in an action in the nature of mandamus, such as this one, where the facts are substantially undisputed, there is no reason to impanel a jury. State ex rel. Landon v. Anding, 132 Minn. 36, 155 N. W. 1048. The mandamus court should simply have decided the ultimate question of law as to whether any property right of plaintiff's has been "taken" or "damaged" in the constitutional sense, based upon the undisputed facts. It is only where the facts are disputed that the mandamus court should utilize a jury to resolve the disputes preparatory to its decision on the ultimate question of law.[7]

69, 415 P. (2d) 750; Turcotte v. State, 84 Idaho 451, 373 P. (2d) 569; N. P. Ry. Co. v. Morton County (N. D.) 131 N. W. (2d) 557.

[5] See, Minn. St. 117.133.

[6] See, Minn. St. 117.07.

[7] Minn. St. 586.12.

Since the mandamus court failed to find specifically either that plaintiff's property had been damaged in the constitutional sense or that it had not, and since the unusual facts in this case could support either finding, we find it necessary to remand the case to the mandamus court for whatever proceedings it deems necessary to enable it to make specific findings on this issue, and, if the court finds that there has been damage or a taking, it must define the nature of such damage or taking with sufficient particularity to enable the lay commissioners properly to assess monetary damages.

■ Finally, since a judgment in a mandamus action brought by an omitted property owner to compel the state to condemn his property involves a final adjudication upon the issue of whether the property has been taken or damaged in the constitutional sense, it should be and is appealable as a matter of right under Rule 103.03(a), Rules of Civil Appellate Procedure. State, by Peterson, v. Anderson, 239 Minn. 144, 58 N. W. (2d) 257.[8] Therefore, in similar cases it will be unnecessary to file an application for discretionary review under Rule 105, Rules of Civil Appellate Procedure.

Reversed and remanded with instructions.

Otis, Justice (dissenting).

Where there has been no taking, I cannot accept a rule which permits a property owner to recover damages for annoyance incidental to the construction of a highway over a dedicated public street on which the owner has deliberately encroached in building his home.

---

[8] Rule 103.03 is substantially identical to Minn. St. 605.09 under which the Anderson case was decided.