209 So.2d 710 (1968)
C.L. NORTHCUTT and Theo D. Northcutt, His Wife, Appellants,
v.
STATE ROAD DEPARTMENT of Florida, an Agency of the State of Florida, Appellee.
No. 67-841.
District Court of Appeal of Florida. Third District.
April 23, 1968.
Brigham & Brigham, Miami, for appellants.
Louis S. St. Laurent and P.A. Pacyna, Tallahassee, for appellee.
Before BARKDULL and SWANN, JJ., and POPPER, DAVID, Associate Judge.
SWANN, Judge.
The Northcutts, plaintiffs below, appeal from an order dismissing their amended complaint with prejudice for failure to state a cause of action against the defendant, State Road Department of Florida, an agency of the State of Florida.
Briefly, their complaint alleged, inter alia, that they had purchased and constructed a house and improvements on real property located in North Miami, Florida, for the approximate amount of $40,000. The individuals and the real property were in good physical condition until the defendant, State Road Department, began and completed the construction, maintenance and operation of the North-South Expressway, a limited access, federally financed interstate highway known as State Road 9-A. They claim that the defendant placed the limited access right-of-way to the interstate highway very close to their real property. They alleged that the constant use of the quiet residential side street as an access road to the highway by earth moving equipment, dump trucks, concrete mixers, cranes, bulldozers, machinery, etc., during and after the construction of the interstate highway was a direct, and proximate cause of certain damages to their house and real property; thus causing the house to become structurally unsound and uninhabitable, and that their damage was irreparable and continuing. They alleged *711 that the defendant had constructed, maintained and operated the interstate highway so as to cause heavy industrial and commercial traffic to use it so near to their property as to cause excessive shock waves, vibrations, and noises, at all hours of the day and night which impaired their health and caused them to lose sleep, become ill and nervous and deprived them of the use and aesthetic beauty of their property, causing it to lose its value for residential purposes so that it cannot be sold or financed for any use or purpose. They maintain that the defendant did not condemn sufficient property to provide for the proper construction, maintenance and operation of the interstate highway system, and the access roads, or their safe operation, and that they had been deprived of the beneficial use and enjoyment of their property. They alleged that they had been permanently deprived of the use, benefit and enjoyment of their property and that this amounted to a taking of their private property without just compensation and without due process of law. They prayed that the court order the State Road Department to institute eminent domain proceedings against their property so that they could recover just and full compensation, as determined by a jury, together with interest, cost and attorneys' fees.
Plaintiffs rely primarily upon the case of City of Jacksonville v. Schumann, Fla. App. 1964, 167 So.2d 95, cert. denied, Fla. 1965, 172 So.2d 597. There, a complaint for inverse condemnation was filed by 57 property owners near the Imeson Airport, which was owned and operated by the defendant, city. The opinion of the court upheld that complaint as sufficient to state a cause for relief for injunctive relief, or by way of inverse condemnation. The City of Jacksonville has sought further appellate relief from this opinion, which has been denied. Cert. denied 390 U.S. 981, 88 S.Ct. 1101, 19 L.Ed.2d 1278 (1968).
In Schumann, among other things, the plaintiffs' property lies within an area which in 1960 was designated by the Federal Aviation Agency as "Area Recommended for Non-Residential Development and The Exclusion of Places of Public Assembly." The plaintiffs' problem was further compounded in 1962 when the City of Jacksonville extended one of its main runways at Imeson Airport so that the approach thereto bisected a road running through plaintiff's property, cutting it into two parts, lying on either side of the end of the extended runway. No such arbitrary action by the government agency has been alleged in this case. In any event, we do not believe that the rule of law set forth in Schumann, supra, should be extended to sustain the sufficiency of the allegations of this complaint for several reasons.
We think there is a substantial difference between the use of an airport by airplanes and the use of highway and access roads by motor vehicles. The noise intensity factor is different; the safety factors are different; and the use factors are different. See Hill, Liability for Aircraft Noise, 19 U.Miami L.Rev. 1, 23 (1964). An airport may be placed at a considerable distance from a city while it is a public necessity for roads and highways to be built close to, or directly through a city, and sometimes through its most heavily populated areas. To sustain the amended complaint of the plaintiffs as sufficient for inverse condemnation would bring to an effective halt the construction, operation and maintenance of access roads and highways within the State of Florida. It would be impossible to determine and prepare with any degree of accuracy, a reasonable budget for the construction of highways and access roads in the future in Florida. After the access roads and highway were constructed and in operation, each individual land owner adjacent thereto could seek damages from the state for a "taking" of their property resulting from the increased noises, dust and vibrations, coming from the motor vehicles using the adjacent highway. It seems clear that there has been *712 no "physical" taking or actual "appropriation" of the plaintiff's property under the laws of Florida. In Florida, in order for the "taking" or "appropriation" of private property for public use, under the power of eminent domain, to be compensable, there must generally be a "trespass or physical invasion". Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370 (1891); Weir v. Palm Beach County, Fla. 1956, 85 So.2d 865. In Weir, it was said:
* * * * * *
"If the damage suffered by the plaintiff is the equivalent of a `taking' or an appropriation of plaintiff's property for public use, then our Constitution itself recognizes the plaintiff's right to compel compensation. On the other hand, if the damage suffered is not a taking or an appropriation within the limits of our organic law, then the damages suffered are damnum absque injuria and compensation therefor by the defendants cannot be compelled. * * *" (Id. at 85 So.2d 867, emphasis added.)
* * * * * *
Florida differs from several other states in that its Constitution does not provide just compensation to the property owner for "damage" to his property; but only for the "taking" or "appropriation" thereof. See Fla. Const., Declaration of Rights, § 12 and Art. XVI, § 29, F.S.A.; Board of Public Instruction v. Town of Bay Harbor Islands, Fla. 1955, 81 So.2d 637; 12 Fla.Jur., Eminent Domain, § 68.
Low flying jet aircraft with their great speed and noise have brought about serious legal problems for adjacent land owners. Many property owners have been successful in seeking relief under the theory of inverse condemnation against the appropriate authority as a result of the excessive noise from low flying jet aircraft. See Thornburg v. Port of Portland, 233 Or. 178, 376 P.2d 100 (1962); Martin v. Port of Seattle, 64 Wash.2d 309, 391 P.2d 540 (1964); United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946); Griggs v. Allegheny County, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962).
Other property owners have sought such relief and failed. See Batten v. United States, 306 F.2d 580 (10th Cir.1962); Alfonso v. Hillsborough County Aviation Authority, 308 F.2d 724 (5th Cir.1962); Ferguson v. City of Keene, N.H.Sup.Ct. Jan. 30, 1968, 238 A.2d 1.
The plight of the property owner in this case is not the same as those directly under, or immediately adjacent, to the excessive noise vibrations coming from low flying jet aircraft; but is "indistinguishable from that of thousands of their fellow country men whose homes abut highways and railroads and who endure the noise without complaint." See Thornburg, supra, 376 P.2d 100, 106; Matson v. United States, 171 F. Supp. 283 (Ct.Cl. 1959). The difference may be one of degree but "the law is not indifferent to considerations of degree." Cardozo, J., concurring in Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935).
Their problem appears to be more analogous to that of real property owners adjacent to railroad tracks.
A review of the law relative to land owners adjacent to railroads indicates that generally, "when a railroad is constructed under legislative authority on its own right-of-way, an owner of land no part of which is taken cannot recover for the lawful and prudent operation of the railroad." 2 Nichols, Eminent Domain, § 6.4434 [4]. See also 26 Am.Jur.2d, Eminent Domain, § 164 and cases cited therein.
In 12 Fla.Jur., Eminent Domain, § 68, p. 48, it is reported:
* * * * * *
"However, in the absence of any unjustified entry upon land of which the fee is held by a private owner, the construction and maintenance of a public improvement under legislative authority in such a manner as to inflict an injury upon adjacent *713 land which would be actionable without such authority do not constitute a taking of such land, unless the owner is substantially ousted and deprived of all beneficial use of the land affected. Acts done in the proper exercise of governmental powers which do not directly encroach upon private property, though they may impair its use, do not amount to a taking of such property within the meaning of the constitutional provision that private property shall not be taken for public use without just compensation being made. * * *"
* * * * * *
The general rule is stated in 4 Nichols, Eminent Domain, § 14 [1], "Damage to tract no part of which is taken."
* * * * * *
"Under the provision for `taking' only, consequential damages are generally not compensable since such loss is deemed to be damnum absque injuria. Acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be taking within the meaning of the constitutional provision. If the property owners' annoyance is of the same type to which everyone living in the vicinity is subjected in varying degrees there is, at most, a sharing in the common burden of incidental damages. Thus, an abutter, the value of whose land is impaired or whose easement rights are interfered with, has no right to compensation unless there is a physical invasion of his property which impairs its use  though there has been no `taking' in the technical sense of that term. Compensation, in such cases, may be required only for a severe interference which is tantamount to a deprivation of the use or enjoyment of property. The principal forms of interference for which compensation has been allowed may be classed as instances of destruction of property or its use. Such instances may be regarded as analogous to the incidental occupation of abutting property (e.g., flooding) which have been held to amount to a `taking' within the meaning of the constitutional provision. * * *" Citing Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422 (1925); City of Tampa v. Texas Company, Fla.App. 1958, 107 So.2d 216.
* * * * * *
Appellant also relies on the State Road Department of Florida v. Tharp, 146 Fla. 745, 1 So.2d 868 (1941), as authority to sustain the sufficiency of its complaint. That case is not applicable herein inasmuch as the action of the road department therein in constructing a bridge and fill had caused water in a stream to rise, thereby reducing the capacity of the mill by at least 50%. In that case the physical invasion of the property by the road department caused a permanent flooding and involved a physical intrusion on the land of another by a permanent and physical object, to-wit, water. See Weir, supra. In Florida, the flooding and covering of earth and land must be a permanent invasion to constitute a taking. Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422 (1925); Dudley v. Orange County, Fla.App. 1962, 137 So.2d 859; and Poe v. State Road Department, Fla.App. 1961, 127 So.2d 898. The appellants' claim in their amended complaint that the defendant had not condemned sufficient property to provide for the proper construction, maintenance and operation of the access road and highway which resulted in the plaintiffs' being deprived of the beneficial use and enjoyment of their property is rejected. Generally, a decision of an administrative body within the realm of its authority will be sustained unless fraud or an abuse of discretion is clearly shown. Wilton v. St. Johns County, Florida, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488 (1929); Broward County Rubbish Con. Assn. v. Broward County, Fla. App. 1959, 112 So.2d 898. See also 2 Nichols, Eminent Domain, § 6.38 [1]. No fraud *714 or abuse of discretion has been clearly shown in this matter.
For the above reasons, the order of dismissal be, and the same is hereby
Affirmed.