352 So.2d 1177 (1977)
DIVISION OF ADMINISTRATION, STATE of Florida DEPARTMENT OF TRANSPORTATION, Appellant,
v.
WEST PALM BEACH GARDEN CLUB et al., Appellees.
No. 76-1786.
District Court of Appeal of Florida, Fourth District.
July 26, 1977.
On Rehearing December 20, 1977.
*1178 H. Reynolds Sampson, Gen. Counsel, Winifred Sheridan Smallwood, Stanley W. Moore and Kenneth M. Towcimak, Tallahassee, for appellant.
James W. Vance, West Palm Beach, Manley P. Caldwell, Jr., Palm Beach, and Elaine N. Duggar of Richardson Law Offices, Tallahassee, for appellees.
LETTS, Judge.
This appeal is taken by the Florida Department of Transportation from a final judgment rendered in a condemnation suit awarding $644,275 for the value of the land actually taken for I-95 and $1,700,000 in severance damages (including cost to cure). We reverse the latter award.
Dreher Park is a city owned park in West Palm Beach some 6,600 feet from north to south and averaging only 600 feet wide. It is bounded on the north by the Florida Power and Light Company substation with all of its customary vertical and horizontal ganglia of electrical gadgetry, wires, and concrete poles. Not far north of that, is the divided four lane highway, Southern Boulevard. The park is bounded on the south by another four lane highway, Forest Hill Boulevard, and is bisected by the two lanes of Summit Boulevard. Its western boundary is now I-95, but formerly was the Seaboard Airline Railroad tracks before the road artery came into being. Its eastern boundary is largely a residential area (only six blocks, and 3200 feet, from US # 1), composed of narrow lots with small homes thereon and a minor sized trailer park.
Much of Dreher Park, itself, was originally purchased by the City of West Palm Beach from the appellant State of Florida for $100.00, the City knowing long before the park was developed to its present level that STATE ROAD 9 WAS TO BE BUILT THROUGH THAT LOCATION. Originally purchased in its raw state, much of it swamp, muck and sand (and some of it used to dump garbage by the City), Dreher Park became the pleasant place that it is now primarily because of the perseverance and vision of one dedicated man, Paul Dreher. Admittedly superintendent of parks for the City, Dreher, nonetheless, largely created the original park by personal, after hours, labor and assistance from volunteer friends and equipment, with little help from the City and in the beginning without the City's knowledge.
Later in 1952 the City returned 200 feet to the State along the western boundary for a right of way to be used in the construction of a limited access highway, the same State Road 9, already referred to above. It is upon this 200 foot strip, together with the additional 150 foot strip condemned hereunder, on which I-95, instead of State Road 9, has been constructed.
In the park itself the City has either created, or permitted, a zoo, a science museum and planetarium, pickup type baseball fields, a model airplane flying club and picnic areas. The City, at time of trial, with approved Federal assistance, was in *1179 the process of implementing a master plan for the further improvement of the park.
The land in question is less than one and one-half miles from the end of Runway 13 at Palm Beach International Airport and is directly adjacent to the glide path thereto when air traffic approaches from the southeast or takes off in that direction.
The condemnation proceedings now before us for review began with no objection by the City to the chosen location nor any allusion to damage from noise factors. In fact prior to the suit being filed, the record reflects quite the reverse and many letters were written by City officials urging the immediate construction of I-95 at this very location.
Thus, for example, the City in 1970 adopted a resolution approving the coming of the limited access facility "designated as Interstate 95 State Road 9."
Much later, in the year 1973, the city manager wrote to Senator Lewis in Tallahassee as follows:
Dear Senator Lewis:
I am writing to you since I know of your interest in the completion of I-95.
Mr. Schutta and Mr. Goodloe of my staff are concerned with the delay which would be caused by requiring an environmental impact statement on the section of I-95 south of Southern Boulevard. I would point out to you that this is the area extending through Dreher Park and if the taking of park land will require an environmental study, this will greatly delay completion of the final project.
Any influence you may have to encourage the DOT to let this contract prior to completion of an environmental impact statement would be greatly appreciated.
 Sincerely,
 Richard G. Simmons
 City Manager
Against this backdrop, the Department of Transportation filed an eminent domain proceeding against several defendants, including the City which filed a general denial. There were no affirmative defenses about lights, vibrations or noise until approximately one and one-half years later, when the City amended its answer to allege that the taking would "necessitate construction of a suitable sound, vibration and light barrier," for which the State should pay.[1] To this contention the Department of Transportation took, and still takes, continuing and strenuous exception.
The resulting jury verdict included an award of $1,700,000 principally to build a wall on the north half of the park, thus creating a noise and light barrier. This appeal followed.
The appellant presents multiple points on appeal, but we shall address ourselves only to those essential to the disposition of this cause. We commence with the award of $644,275 as compensation for the land actually taken and find no error.
The appellant, Department of Transportation, argues that it should have been allowed to have its market valuation, predicated upon use for residential purposes, submitted to the jury inasmuch as this is the traditional approach, 4 Nichols, Eminent Domain, § 12.32(4)(c). This market valuation only totalled $364,925 or some $280,000 less than the actual award. The City's appraisers on the other hand appraised this land as a park thereby adopting a "value in use" concept.
The Department of Transportation additionally contends that if there is a reasonable possibility that the use of the property may ever be changed, then the value in use concept is in error. However we see nothing in the record to suggest the possibility of the land being employed for anything other than its present use. Dreher Park is encumbered by a public purpose clause in the deed of conveyance and the land would revert to the State if it were ever used for anything other than a public purpose. In addition, the property is zoned for park use *1180 and has in fact been a park for over thirty years. We note the Federal grant and master plan to further develop it.
The First District was faced with a somewhat similar problem in State Department of Transportation v. Byrd, 273 So.2d 400 (Fla. 1st DCA 1973), where the real estate involved was a recreational facility serving the citizens of Daytona Beach. The court in that case held that an appraisal based on fair market value would not be proper, due to the "special use" of the parcel involved. In the case now before us there is little likelihood of the land being used as anything other than a park and we therefore cannot find the trial judge to be in error for adopting the "value in use" concept and rejecting other alternatives.
Considering next the award of $1,700,000, (all but $122,500 of which was for the purpose of curing the noise from the highway by constructing a wall to preserve the tranquility of the park[2]), we find this to be in error and reverse.
Among the jury instructions given was one that if the jury found substantial impact damage and impairment to the remainder of Dreher Park, and if it found the construction of a noise barrier to be reasonable in order to preserve the utility of the park and minimize the noise, then it should include in the award a sum sufficient to build such a noise barrier wall. We believe this instruction, objected to, was erroneous and highly prejudicial as the subsequent jury verdict conclusively demonstrated.
Mere highway noise as such, not coupled with a physical invasion or trespass, is not compensable under Florida law. Travis v. Department of Transportation, 333 So.2d 86 (Fla. 1st DCA 1976); Northcutt v. State Road Department, 209 So.2d 710 (Fla. 3rd DCA 1968); Weir v. Palm Beach County, 85 So.2d 865 (Fla. 1956).[3] By contrast, it is equally clear under our State Constitution that "no private property shall be taken except for a public purpose and with full compensation therefor paid." Florida Constitution, Article X, Section 6(a) (emphasis supplied). The problem here is that the case at bar is somewhat of a hybrid. On the one hand there has been a partial "taking" of a 150 foot strip. On the other hand, the bulk of the $1,700,000 award was to build a wall on land not taken and on which there was no physical invasion or trespass.
The Department of Transportation argues that Florida is a "taking" state and that remaining land not subject to actual physical invasion or trespass, although damaged, is not capable of receiving compensation. Northcutt v. State Road Department, 209 So.2d 710 (Fla. 3rd DCA 1968); Weir v. Palm Beach County, 85 So.2d 865 (Fla. 1956). However the courts in Northcutt and Weir were both careful to limit the language used so as to leave room for the kind of "damage" that would be tantamount to an actual taking if the owner "... is substantially ousted and deprived of all beneficial use of the land affected." Northcutt, supra at 713. Thus any such damage tantamount to an actual taking, despite the absence of physical invasion or trespass, has been held to be compensable and we think, properly so. A Florida case in point is Dean v. State Road Department, 165 So.2d 257 (Fla. 3rd DCA 1964). In Dean, the condemning authority took part of the property for a road and the court allowed severance damages because the remaining church premises were rendered practically useless as a place of public worship and thus a cognizable element in the condemnation proceeding. Likewise see State v. Board of Education of City of Elizabeth, 116 N.J. Super. 305, 282 A.2d 71 (1971).
Applying the foregoing to the case now before us however, the record is completely devoid of suggestion that Dreher Park is no longer beneficially useful as a park because *1181 of the noise increase. To the contrary, the record is replete with testimony that it can and will continue to be used as a park and we again note that the City is involved in a master plan (with Federal aid) to further improve it. Accordingly, the considerable increase in noise levels at Dreher Park caused by passing traffic on I-95 is no more of a "taking" than has been inflicted on countless tens of thousands of Florida residences (not to mention an abundance of parks and golf courses) whose occupants endure the consequences of endless traffic noise from adjacent arterial highways. (See Northcutt, supra, 712). The damage to Dreher Park is no different in kind from that suffered by anyone else similarly situated. (See Northcutt, supra, 713).
The City advances the further argument that Dreher Park is not an average city park, but was a "passive" park, the passivity of which has been destroyed by the noise of I-95.[4] Volume 31A of Words and Phrases, 9 (Supp. 1976) defines passive as "inactive, quiescent, not active, permissive." Pursuant thereto the City cites the now famous New York case of Dennison v. State, 48 Misc.2d 778, 265 N.Y.S.2d 671 (Ct. Claims 1965); affirmed, 22 N.Y.2d 409, 293 N.Y.S.2d 68, 239 N.E.2d 708 (N.Y.App. 1968). In Dennison the court indeed did hold that a property owner who suffers loss of privacy, seclusion and quietude to his remaining property because of a partial taking for a highway may recover because of the "attendant noise, lights and odors;" however, in Dennison, the opinions in both the court of claims and on appeal spoke lyrically of "sylvan beauty", "high and beautifully wooded and landscaped land", "no unsightly telephone or electric poles", "a fast stream ... (as) one border of the property", "entirely secluded quiet and peaceful", "access to a private dock and beach on Lake George", "estate residential" and a beautiful view of forest and mountain."[5]
We cannot relate such lyrical descriptions to Dreher Park, one and one-half miles away from touchdown, next to a screaming jet glide path for a major airport, six blocks from US # 1, bounded on the north and south by major arteries, bisected by a third, and bordered by the Seaboard Airline Railroad tracks. Moreover, the park itself has a zoo, a museum, ball fields, model airplane club, and immediately to the north, an electrical substation. Finally, we must comment that the western boundary was slated, in any case, for a limited access highway (SR 9), the right of way for which was given back to the State by the City (and for which no compensation would be forthcoming) together with urgent exhortations from City officials that the highway be built as soon as possible AND ANY SLATED ENVIRONMENTAL IMPACT STUDY PRIOR TO CONSTRUCTION, DISPENSED WITH.
To be sure, Dreher Park is a pleasant place, but there is nothing in the record to support the loss of the kind of sylvan beauty existing in the Dennison case, and we conclude that the increase in noise levels there, caused by I-95, does not constitute a "taking" under the laws of this State.
Turning finally to the question of the severance and cost to cure awards, as same affect the Science Museum, the Zoological Society and the neighboring municipal golf course, we are compelled to disallow said awards for the same reasons already expressed above. Such a result is particularly unfortunate because the planetarium has suffered a diminution in viewing capacity due to the increase in light; however we must again point out that there has been no physical invasion or trespass, and the diminution has not rendered the planetarium useless nor has the museum been substantially deprived of its beneficial use. There is no suggestion that the public will not continue to use the facility. All *1182 this being so, there is no "taking" as such, and accordingly, there can be no award.
We note that neither estoppel nor claim of avoidable consequences was submitted to the jury. Nonetheless, although not essential to our decision, we do not deem it inappropriate to point out that the lease was signed by the museum before the construction of the planetarium. This lease clearly revealed the presence of the 200 foot right of way for State Road 9, immediately adjacent to the leased premises. Notwithstanding, the museum went ahead and constructed the facility anyway, and participated in, and acquiesced to, a letter written to the Department of Transportation, prior to I-95, in which the then mayor of West Palm Beach stated:
Consideration has been given to the effects of traffic on the planetarium operation. It is our opinion that the highway traffic will not add any problem to the planetarium operation... . I simcerely hope this provides all of the information that is required by the Federal Government so that you can proceed with this highway. All of the parties present at this meeting[6] are in favor of the early construction of this segment of I-95.
The entire severance and cost to cure award of $1,700,000 is therefore reversed and the cause remanded to the trial court for entry of an appropriately modified judgment, excluding said sum.
As to the motion for attorneys fees filed by counsel for the appellees, same is hereby granted inasmuch as their efforts have successfully resulted in the preservation of the higher compensation award for the land actually taken. This cause is therefore further remanded to the trial judge for consideration of fees to be awarded. Somewhat unusually we would remark that the assembled appeal was composed of 250 pages of briefs, a myriad of citations to the law, a 2,200 page record and a 6,000 page transcript. From all this came forth an output of painstaking and exhaustive work, by counsel for both sides, which is the product of extraordinary effort evidencing a high level of competence and the utmost in credibility.
ALDERMAN and DAUKSCH, JJ., concur.

ON PETITION FOR REHEARING
LETTS, Judge.
The petition for rehearing is hereby granted in part and the second paragraph on page 1180 of the original opinion is now amended to permit the allowance of severance damages to the remaining lands, in the sum of $72,500, as per the uncontroverted testimony of the appellees' appraiser.[1] The remainder of the award is found to be in error and is reversed in accordance with the original opinion.
ALDERMAN, C.J., and DAUKSCH, J., concur.
NOTES
[1] The defendant, Science Museum, did initially file an affirmative defense to the effect that the taking would result in total or partial loss of observatory viewing capabilities due to lights and vibrations.
[2] A note from six members of the jury, assumed as accurate in the briefs on appeal, shows that $7,500 was apportioned to the neighboring West Palm Beach municipal golf course, $25,000 to the Science Museum and Planetarium, $90,000 to the south end of the park below Summit Boulevard, and $1,477,500 for the noise barrier wall.
[3] The City argues that all of the foregoing citations involve inverse condemnation and are therefore not applicable in the case now before us. We fail to see a valid distinction.
[4] This argument presents an interesting paradox, for the City is implementing a master plan to make the park more passive, which posture would appear to be inconsistent with any concomitant claim that the existing passivity has been destroyed.
[5] We note the recent case of Yonkers v. State of New York, 40 N.Y.2d 408, 386 N.Y.S.2d 865, 353 N.E.2d 829 (N.Y.App. 1976), which applies the Dennison rationale to a setting anything but "sylvan"; however, we prefer the reasoning of the dissent in that case and believe the majority misunderstood Dennison.
[6] Included at this meeting were the representatives of the museum, and the letter was dictated in front of them.
[1] Bleachers $9,000; model airplane circle $1,600; ball fields relocated $52,850; nursery stock $6,450; parking lot $2,600.