383 So.2d 285 (1980)
John C. FLAKE et al., Appellants,
v.
STATE of Florida, DEPARTMENT OF AGRICULTURE, Etc., Appellees.
No. 78-2054/T4-216.
District Court of Appeal of Florida, Fifth District.
May 7, 1980.
*286 Charles M. Harris of Crofton, Holland, Starling, Harris & Severs, P.A., Titusville, for appellants.
Frank A. Graham, Jr., of Florida Dept. of Agriculture & Consumer Services, Tallahassee, for appellees.
ORFINGER, Judge.
Alleging that a quarantine imposed by appellee on appellant's citrus nursery amounted to a confiscation without due process of law and without proper payment or compensation, appellant filed a complaint for a declaration of inverse condemnation and for an award of damages.
The factual background and the trial court's findings and conclusions are set out in its final judgment which we set forth in full:
This action was tried before the Court. On the evidence presented the Court finds and orders as follows:
FINDINGS OF FACT
1. Plaintiffs are and have been for many years, owners and operators of citrus groves in Brevard County, Florida. On one of these groves is located a nursery of some six thousand grapefruit trees, which is the subject matter of this suit.
2. Defendant is an agency of the State of Florida, and through its Division of Plant Industry, is charged with the enforcement of Chapter 581, Florida Statutes, governing nurseries and the movement of nursery stock therein as may be necessary in the eradication, control or prevention of the dissemination of plant pests.
3. In the early spring of 1971 plaintiff, John C. Flake, together with some associates, chartered an aircraft in Florida and flew to Texas for the purpose of bringing in thirty-four (34) Star Ruby grapefruit trees from a nursery located in that state. The Star Ruby was a variety which had not previously been introduced into the State of Florida and had not been subject to the biological indexing process to determine it disease-free or virus-free, by either the responsible authorities in Texas or in Florida.
4. Flake caused the thirty-four (34) Star Ruby trees to be planted in a grove area owned by plaintiffs and established their nursery with budwood from the thirty-four trees they brought in from Texas.
5. Plaintiffs' nursery site was not approved by the Division of Plant Industry, as is required by its Rule 5B-11.06, Florida Administrative Code, prior to planting, nor were any of the nursery trees treated in accordance with the requirements of that rule prior to being planted on property other than the property where grown.
6. Prior to plaintiffs' importation of their Star Ruby grapefruit trees, defendant *287 had also secured a supply of the new variety for the purpose of determining whether or not it was disease-free or subject to any virus type disease. This indexing process for the new variety was estimated to take between two and three years whereupon the variety would be released to citrus nurserymen throughout the state through the organized citrus budwood registration program. Sometime during their indexing process and their investigation of the adaptibility of the new variety to Florida, defendant determined from the developers of the strain in Texas that Star Ruby was unusually susceptible to "foot rot", a serious disease of citrus which is widespread in Florida. Also it was determined that one of the subpropagations of the parent tree in Texas had developed citrus ringspot virus  necrotic strain (a disease not described until 1973). Defendant's investigation further revealed that there was little knowledge as to the cause of the spread of this virus disease. A similar ringspot disease had been found in a few Florida trees but there was no evidence that natural spread of the Florida disease isolates had taken place.
7. Plaintiffs at no time notified defendant of their, by then, extensive plantings of Star Ruby grapefruit trees. Rather, in answer to direct questions by defendant's agents as to whether or not they possessed any of the new variety, plaintiffs were "evasive" in their answers.
8. When defendant's agents, by their own activities, discovered the existence of plaintiffs' Star Ruby material, it immediately established a quarantine prohibiting distribution of plaintiffs' Star Ruby material. The estimated time of the quarantine was approximately two years  the time necessary for defendant to complete its indexing program.
9. Notice of defendant's agency action in establishing the quarantine was given plaintiffs on April 11, 1975. At no time after the issuance of this notice did plaintiffs challenge the action of the agency by either a request for a hearing pursuant to Section 120.57, the Administrative Procedure Act, nor seek judicial review as provided by Section 120.68, methods provided by statute for challenging the validity of agency action.
10. Because of persistent rumors of other Star Ruby plantings within the state, the defendant, in August of 1975, pursuant to Section 120.62 of the Administrative Procedure Act, instituted an agency investigation determining the extent to which Star Ruby plantings existed within the state. Following that hearing, defendant issued an order requiring the destruction of all Star Ruby holdings within the state. Plaintiffs and others challenged the validity of the destruction order in the circuit court of this circuit in case number C.A. 75-3746, State of Florida, Department of Agriculture and Consumer Services v. John C. Flake, which case is before the court by stipulation to be considered under the doctrine of judicial notice. The decision in that case struck down the order requiring the destruction of Star Ruby material, but did not rule on the validity of the quarantine previously established by the defendant.
11. The defendant's notice of quarantine prohibited plaintiffs from transplanting their nursery stock to any of their noncontiguous property. However, pursuant to a conference between plaintiffs and defendant, plaintiffs were authorized on April 6, 1976, to transplant their nursery stock to noncontiguous groves, if done under the supervision of defendant's agents. Plaintiffs thereafter transplanted approximately 1,500 of their trees, pursuant to the agreement. On June 10, 1976, this agreement was terminated by defendant on discovery that one of plaintiffs' Star Ruby trees was infected with citrus ringspot virus  necrotic strain. It was later determined that budwood from this infected tree was budded onto trees in Dunn's Nursery, causing a spread of the infection necessitating the destruction of those infected trees and certain healthy trees immediately surrounding them. Dunn's Nursery is in Orange County, Florida.

*288 12. While defendant, by its quarantine, essentially prohibited plaintiffs' "distribution" of their nursery stock, as defined by Section 581.011(10), there was no evidence of trespass or physical invasion by defendant, or appropriation of plaintiffs' property for public use.
13. The quarantine of plaintiffs' property was lifted in April of 1977 by the execution of a "compliance agreement" voluntarily signed by plaintiffs. By this time, plaintiffs' nursery trees had grown larger than the optimum size for transplanting. While the evidence showed that the expense of transplanting would be more for the larger trees, the nursery stock could still be transplanted and were not economically worthless.
CONCLUSIONS OF LAW
14. It has long been held that the citrus industry is of such vital import to the welfare and economy of this state that police power measures may be taken to safeguard the industry. (State of Florida, Department of Citrus v. Griffin, 239 So.2d 577, 578). [Fla. 1970]
15. Defendant, through its agency head, the Commissioner of Agriculture, has "... supervision of matters pertaining to agriculture except as otherwise provided by law ..." (Emphasis supplied). [sic]
16. Notice of the quarantine, prior to its issuance, was not required, since plaintiffs were afforded remedies under the Administrative Procedure Act by either (a) requesting a hearing under § 120.57 of a proceeding in which their substantial interests were determined, or (b) immediate judicial review of final agency action in the district court of appeal pursuant to § 120.68, Florida Statutes.
17. Generally the decision of an administrative body within the realm of its authority will be sustained unless fraud or an abuse of discretion is clearly shown (Northcutt v. State Road Department, 209 So.2d 710, 713). [Fla. 3d DCA, 1968]
18. Action of defendant in establishing a quarantine of plaintiffs' nursery did not destroy the property or appropriate it to public use but placed restrictions on its use by the owner. The agency action in question then was in the exercise of police power of the sovereign state and not in the exercise of power of eminent domain. (State Plant Board v. Smith, 110 So.2d 401, 405). [Fla. 1959]
19. In enacting regulatory measures which protect but do not destroy property, the law need not restrict itself to conditions actually harmful but may require precautions within the whole range of possible danger (Corneal v. State Plant Board, 95 So.2d 1), [Fla. 1957]. The establishment of the quarantine by defendant in this case was precautionary and not destructive in nature.
IT IS, THEREFORE, ORDERED AND ADJUDGED that the Complaint filed herein be and it is hereby dismissed with prejudice.
There is competent substantial evidence to support the findings and conclusions of the trial judge. In the light of the importance of the citrus industry to the state (State of Florida v. Griffen, 239 So.2d 577 (Fla. 1970) and cases cited therein) we cannot say that the trial court abused its discretion in upholding a quarantine under the circumstances found here. In imposing the quarantine there was no attempt at destruction of trees suspected to be infected or of healthy trees, but only a requirement that the nursery stock not be moved to non-contiguous property while the state completed its examination of similar stock for suspected disease carrying potential.
State Plant Board v. Smith, 110 So.2d 401 (Fla. 1959), does not apply here because the statute there under review gave the Plant Board the right to destroy both diseased and healthy trees without a prior hearing in the absence of any demonstrated imminent danger even as to the diseased trees. However, the Supreme Court recognized that:
It is well settled, however, that the concept of due process does not necessarily require the granting of a hearing prior to the taking of official action in the exercise of the police power. Where a compelling *289 public interest justifies the action, the Legislature may authorize summary action subject to later judicial review of the validity thereof. (Emphasis in original). Id., at 407, 408.
In enacting regulatory measures which protect but do not destroy property, the law need not restrict itself to conditions actually harmful but may require precautions within the whole range of possible dangers, Corneal v. State Plant Board, 95 So.2d 1 (Fla. 1957), and the trial court properly found the action here to be precautionary and not destructive in nature.
AFFIRMED.
CROSS and SHARP, JJ., concur.